United States District Court
Southern District of Texas

**ENTERED**

November 18, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JONATHAN WILTURNER, <br> TDCJ #01855260, | § <br> § <br> § | |
| Plaintiff, | § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. H-21-0413 |
| WARDEN JEFFERY RICHARDSON, <br> et al., | § <br> § <br> § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Jonathan Wilturner has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1), concerning the conditions of his confinement in the Texas Department of Criminal Justice ("TDCJ"). He has also filed Plaintiff's More Definite Statement ("Plaintiff's MDS") (Docket Entry No. 5), which provides additional details about his claims. Warden Jeffery Richardson, Assistant Warden Tracy Hutto, and Officer Daniel Goodall have filed Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion to Dismiss") (Docket Entry No. 8) and Wilturner has responded with Plaintiff's Reply to Defendants' Motion to Dismiss ("Plaintiff's Reply") (Docket Entry No. 11). After considering all of the pleadings and the applicable law, the Motion to Dismiss will be granted in part and denied in part for the reasons explained below.

## I. <u>Background</u>

Wilturner is incarcerated by TDCJ at the Estelle Unit in Huntsville.[1]  In a Complaint that is dated February 2, 2021, Wilturner filed this civil rights lawsuit under 42 U.S.C. § 1983 against the following prison officials who are employed by TDCJ at the Estelle Unit facility:   (1) Warden Jeffery Richardson; (2) Assistant Warden Tracy Hutto; and (3) Correctional Officer Daniel Goodall.[2]  Each defendant is sued in his or her individual and official capacity.[3]

Wilturner alleges that he is disabled as the result of a back injury that he sustained when he fell from the top bunk and landed on the concrete floor of his cell at the Estelle Unit on July 26, 2019.[4]  Due to this injury Wilturner suffers constant pain and numbness in his legs on a daily basis.[5]  He has difficulty standing up and he has reportedly fallen "numerous times" because of the numbness in his legs.[6]  He wears a back brace and a walker for

---

[1]Complaint, Docket Entry No. 1, p. 3.   For purposes of identification all page numbers refer to the pagination imprinted on each docket entry by the court's electronic case filing system, ECF.

[2]<u>Id.</u> at 3, 7.

[3]<u>Id.</u> at 7.

[4]Plaintiff's MDS, Docket Entry No. 5, p. 3, at Question 4(b). The injury that Wilturner sustained is the subject of a separate lawsuit that is pending in this district.   <u>See Wilturner v. Dickerson,</u> Case No. 4:20-cv-1464 (S.D. Tex).

[5]Plaintiff's MDS, Docket Entry No. 5, p. 3, at Question 4(c).

[6]<u>Id.</u>

support to prevent him from falling.[7]  Because he is at risk for falling he also has a "disability shower pass" from the medical department so that he can "sit down" while showering.[8]

On August 7, 2020, Wilturner received notice that he tested positive for COVID-19, and he was immediately placed in quarantine in the C1 cellblock of the Estelle Unit.[9]  Wilturner describes the C1 cellblock as filthy and states that the inmates were not given cleaning supplies.[10]  Wilturner states that he was housed with a cellmate and many other inmates who had tested positive for COVID-19, many of whom were allowed to "pass[] out food [while] coughing, sneezing, and . . . without san[i]tizing."[11]  Wilturner alleges that the C1 cellblock had only a "stand-up shower," which failed to accommodate his disability.[12]  Wilturner remained in C1 cellblock for seven days until August 14, 2020, when he was moved to the D1 cellblock.[13]  Wilturner alleges that the D1 cellblock, where he remained for 19 days, also had only a stand-up shower.[14]

---

[7]Id. 4(d).

[8]Complaint, Docket Entry No. 1, p. 4 § V.

[9]Plaintiff's MDS, Docket Entry No. 5, p. 2, at Question 3(a).

[10]Complaint, Docket Entry No. 1, p. 7 ¶ 9; Plaintiff's MDS, Docket Entry No. 5, p. 2 at Question 3(b).

[11]Complaint, Docket Entry No. 1, p. 7 ¶ 10.

[12]Id. at 4 § V and 8 ¶¶ 12, 15; Plaintiff's MDS, Docket Entry No. 5, p. 2, at Question 3(b).

[13]Plaintiff's MDS, Docket Entry No. 5, pp. 2-3, at Question 3(e).

[14]Id.

Wilturner contends that he was unable to shower or clean himself while quarantined, which exacerbated his suffering due to symptoms of COVID-19.[15] Those symptoms included continual coughing, shortness of breath, muscle pain, and sore throat causing "extreme pain, and suffering."[16] Wilturner alleges that he contacted Warden Richardson in writing to attempt "Informal Resolution" regarding his lack of access to a safe shower on August 11, 2020, but never received a response.[17] Wilturner contends that he notified Warden Richardson again in a formal grievance that he filed on August 17, 2020, expressing concerns about his safety and requesting an accommodation for his disability.[18] Warden Richardson denied the grievance on August 20, 2020, explaining that there was "a shortage of staffing."[19]

On September 8, 2020, Wilturner complained to Officer Goodall, explaining that he had a "disability shower pass" from the medical department and needed to sit down in the shower.[20] Officer Goodall responded that same day by bringing Wilturner a chair to sit on while in the shower.[21] Wilturner explained that the chair was

---

[15]Complaint, Docket Entry No. 1, p. 8 ¶ 15.

[16]Id. ¶ 16.

[17]Id. ¶ 17.

[18]Id. ¶ 18.

[19]Plaintiff's MDS, Docket Entry No. 5, p. 5, at Question 8.

[20]Complaint, Docket Entry No. 1, p. 9 ¶ 22.

[21]Id. ¶ 23; Plaintiff's MDS, Docket Entry No. 5, p. 5, at Question 10.

inadequate because it was not bolted to the floor, posing a risk that he could fall due to the numbness in his legs.[22]   Officer Goodall reportedly told Wilturner that if he did not use the chair he was provided with he would not be able to shower.[23]   While using the shower chair provided by Officer Goodall, Wilturner fell when he was unable to brace himself on the shower chair, which flipped over, causing Wilturner to "land[] on his already injured back [and] injur[e] his right hand, left shoulder and neck."[24]   Wilturner chose not to shower again for the remainder of the time he spent in quarantine because of the failure to accommodate his disability with access to a safe shower chair.[25]

After the incident involving Officer Goodall, Wilturner filed another formal grievance dated September 9, 2020.[26]   Wilturner complained that he had been denied a shower between August 12, 2020, and September 8, 2020, with "deliberate indifference" to his safety as a disabled person.[27]   Warden Richardson responded that his office investigated the claim and noted that Officer Goodall had provided Wilturner with a chair, which Wilturner sat in and then

---

[22]Plaintiff's MDS, Docket Entry No. 5, pp. 5-6, at Question 11.

[23]Complaint, Docket Entry No. 1, p. 9 ¶ 25.

[24]Id. at 10 ¶¶ 27-28.

[25]Id. ¶ 30; Plaintiff's MDS, Docket Entry No. 5, at Question 11.

[26]Step 1 Offender Grievance Form (No. 2021003510) ("Step 1 Grievance"), attached to Complaint, Docket Entry No. 1, pp. 14-15 (incorrectly numbered pp. 7-8).

[27]Id. at 14 (incorrectly numbered p. 7).

-5-

turned over.[28]   Finding no evidence that Wilturner had fallen in the shower due to the chair that was placed in there by Officer Goodall, Warden Richardson stated that no further action was warranted.[29]

On September 12, 2020, Wilturner contacted Assistant Warden Hutto while she was walking down the hallway and requested access to a shower that accommodated his disability.[30]   Hutto initially said that she would "check into" Wilturner's concerns, but she denied his request for an accessible shower the same day.[31] Wilturner claims that he "personally notified" Warden Richardson about his concerns on September 14, 2020, but Richardson denied Wilturner's request to accommodate his disability and ignored his suffering.[32]

Wilturner alleges that he was denied humane conditions of confinement because he was unable to shower for a total of 26 days, which caused him to develop a "wide-spread[] rash" on his chest that caused discomfort requiring medical care.[33]   Wilturner alleges that the defendants acted with deliberate indifference to his

---

[28]Id. at 15 (incorrectly numbered p. 8).

[29]Id.

[30]Complaint, Docket Entry No. 1, p. 9 ¶ 20; Plaintiff's MDS, Docket Entry No. 5, p. 5, at Question 9.

[31]Id.

[32]Complaint, Docket Entry No. 1, pp. 8-9 ¶ 19.

[33]Complaint, Docket Entry No. 1, p. 9 ¶ 26; Plaintiff's MDS, Docket Entry No. 5, p. 4 at Question 6.

health and safety in violation of the Eighth Amendment, and he also appears to allege that defendants failed to accommodate his disability by not providing him with access to a shower in violation of the Americans with Disabilities Act (the "ADA").[34] He seeks injunctive relief and compensatory and punitive damages.[35]

The defendants move to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Wilturner's claim for injunctive relief is moot and that he has otherwise failed to state a claim because they are entitled to both official and qualified immunity.[36] These arguments are examined below under the applicable standard of review.

## II.  Standard of Review

### A.  Motions to Dismiss Under Rule 12(b)(1)

The defendants have moved to dismiss the Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'" Halmekangas v. State Farm Fire and Casualty Co., 603 F.3d 290, 292 (5th Cir. 2010). "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional

---

[34]Complaint, Docket Entry No. 1, p. 11 ¶ 33.

[35]Id. at 11-12 ¶¶ 37-39.

[36]Motion to Dismiss, Docket Entry No. 8, pp. 5-14.

power to adjudicate the case.'"   <u>Krim v. pcOrder.com, Inc.,</u> 402
F.3d 489, 494 (5th Cir. 2005).

**B.    Motions to Dismiss Under Rule 12(b)(6)**

The defendants have moved to dismiss the Complaint under Rule
12(b)(6) of the Federal Rules of Civil Procedure for failure to
state a claim upon which relief may be granted.   To withstand a
motion to dismiss under Rule 12(b)(6), the factual allegations in
the complaint "must be enough to raise a right to relief above the
speculative level[.]"   <u>Bell Atlantic Corp. v. Twombly,</u> 127 S. Ct.
1955, 1965 (2007) (citation omitted).   If the complaint has not set
forth "enough facts to state a claim to relief that is plausible on
its face," it must be dismissed.   <u>Id.</u> at 1974.

In reviewing a motion under Rule 12(b)(6), a court must
"'accept[] all well-pleaded facts as true and view[] those facts in
the light most favorable to the plaintiff.'"   <u>Bustos v. Martini
Club, Inc.,</u> 599 F.3d 458, 461 (5th Cir. 2010) (citation omitted).
However, a reviewing court need not accept as true any "conclusory
allegations, unwarranted factual inferences, or legal conclusions."
<u>Ferrer v. Chevron Corp.,</u> 484 F.3d 776, 780 (5th Cir. 2007)
(citation and internal quotation marks omitted).   In other words,
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."   <u>Ashcroft
v. Iqbal,</u> 129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly,</u> 127 S. Ct.
at 1965).

Wilturner represents himself in this action. A <u>pro se</u> litigant's pleadings are held to a less stringent standard than those drafted by lawyers. <u>See Haines v. Kerner</u>, 92 S. Ct. 594, 596 (1972) (per curiam); <u>see also Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) ("A document filed <u>pro se</u> is 'to be liberally construed[.]'") (quoting <u>Estelle v. Gamble</u>, 97 S. Ct. 285, 292 (1976)). Nevertheless, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level[.]" <u>Twombly</u>, 127 S. Ct. at 1965. If the plaintiff's complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. <u>Id.</u> at 1974.

### III.   <u>Discussion</u>

**A.   The Claims for Injunctive Relief are Moot**

The defendants note that Wilturner is no longer housed in quarantine under conditions of confinement that do not afford access to a shower that accommodates his disability.[37] Wilturner does not dispute that he is no longer subject to conditions that deprive him of a safe, accessible shower. Because he is no longer subject to the conditions of confinement that form the basis for his Complaint, Wilturner's claim for injunctive relief is moot. <u>See Herman v. Holiday</u>, 238 F.3d 660, 665 (5th Cir. 2001) (noting that plaintiff's transfer to a different prison facility rendered his claims for declaratory and injunctive relief moot); <u>see also</u>

---

[37]Motion to Dismiss, Docket Entry No. 8, p. 7, n.6.

<u>Flaming v. Alvin Community College,</u> 777 F. App'x 771, 772 (5th Cir. 2019) (per curiam) (holding that an inmate's ADA claim was properly dismissed as moot "where the cause of action is no longer live") (quoting <u>Henschen v. City of Houston,</u> 959 F.2d 584, 587 (5th Cir. 1992)).   Therefore, the defendants' motion to dismiss Wilturner's claims for injunctive relief will be granted.

**B.   Official Immunity**

The defendants argue that Wilturner's claims for monetary damages against them in their official capacity as state employees are barred by the Eleventh Amendment.[38]   Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency. <u>See Will v. Michigan Dep't of State Police,</u> 109 S. Ct. 2304, 2309 (1989).   The Eleventh Amendment also bars a federal action for monetary damages against state officials when the state itself is the real party in interest.   <u>See Pennhurst State School & Hospital v. Halderman,</u> 104 S. Ct. 900, 908-09 (1984).   A suit against a state official in his or her official capacity is considered a suit against the state itself.   <u>See Will,</u> 109 S. Ct. at 2312 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.   As such, it is no different from a suit against the State itself.") (internal citations omitted).

---

[38]Motion to Dismiss, Docket Entry No. 8, pp. 5-7.

Texas has not waived its immunity from suit under the Eleventh Amendment, and Congress did not abrogate that immunity when it enacted 42 U.S.C. § 1983. See NiGen Biotech, L.L.C. v. Paxton, 804 F.3d 389, 394 (5th Cir. 2015) (citing Quern v. Jordan, 99 S. Ct. 1139, 1145 (1979)). As a result, the defendants are entitled to immunity from any claim under § 1983 for monetary damages against them in their official capacity.[39] See Loya v. Texas Department of Corrections, 878 F.2d 860, 861 (5th Cir. 1989) (per curiam) ("[TDCJ's] entitlement to immunity under the [E]leventh [A]mendment is clearly established in this circuit."); Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2001) ("[T]he Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity."). To the extent that Wilturner seeks monetary damages from the defendants in their official capacity under § 1983, the motion to dismiss will be granted.[40]

## C.   Supervisory Liability

Warden Richardson and Assistant Warden Hutto argue that Wilturner's claims against them must be dismissed because he has

---

[39]There is a narrow exception that applies to claims for prospective injunctive relief. See Ex parte Young, 28 S. Ct. 441 (1908). This exception does not apply because, as noted above, Wilturner's claim for injunctive relief is moot.

[40]The Supreme Court has expressly declined to decide whether states are immune from suits for damages arising from conditions that violate the ADA. See United States v. Georgia, 126 S. Ct. 877 (2006). Because the defendants do not separately brief the issue of official immunity from Wilturner's claims under the ADA, dismissal of his official-capacity claims is limited to Wilturner's contention that the defendants violated his rights under the Eighth Amendment.

sued them solely because they are supervisory officials.[41]   It is
well established that a supervisory official may not be held liable
for a civil rights violation under a theory of respondeat superior
or vicarious liability.  Monell v. Department of Social Services of
City of New York, 98 S. Ct. 2018, 2036 (1978).  Because vicarious
liability is inapplicable in an action under 42 U.S.C. § 1983, "a
plaintiff  must  plead  that  each  Government-official  defendant,
through the official's own individual actions, has violated the
Constitution."  Iqbal, 129 S. Ct. at 1948.  To demonstrate super-
visory liability under § 1983, a plaintiff must allege either that
they participated in acts that caused a constitutional deprivation
or that they implemented unconstitutional policies causally related
to his injuries.  See Alderson v. Concordia Parish Correctional
Facility, 848 F.3d 415, 421 (5th Cir. 2017) (citing Mouille v. City
of Live Oak, Texas, 977 F.2d 924, 929 (5th Cir. 1992)).

Wilturner states that he personally advised Warden Richardson
about  his  lack  of  access  to  a  shower  that  accommodated  his
disability by submitting a written request for Informal Resolution
on August 11, 2020, and by filing a formal grievance on August 17,
2020, which Richardson denied.[42]   Wilturner alleges that he also
personally notified Assistant Warden Hutto on September 12, 2020,
that he was being denied a shower that accommodated his disability,

_____

[41]Motion to Dismiss, Docket Entry No. 8, pp. 8-9.

[42]Complaint, Docket Entry No. 1, p. 8 ¶¶ 17-18.

but that she also denied his request for an accessible shower.[43] Taking these allegations as true, which the court is required to do at the pleading stage, Wilturner alleges that both Warden Richardson and Assistant Warden Hutto were personally aware that he was disabled and that he was being denied access to a shower but failed to respond or take steps to avert a risk to Wilturner's health and safety. For reasons discussed more fully below, Wilturner's allegations are sufficient to state a plausible claim that Richardson and Hutto were personally involved in a violation of his rights under the ADA and the Eighth Amendment. Accordingly, the defendants' motion to dismiss the claims against Warden Richardson and Assistant Warden Hutto based on their roles as supervisory officials will be denied.

## D.   ADA Claims

Wilturner's primary claim is that the defendants violated his rights by denying him access to a shower that accommodated his disability.[44] Although Wilturner does not expressly reference the ADA in his pleadings, his claim is liberally construed to arise under Title II of the ADA, which provides as follows: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

---

[43]Id. at 9 ¶ 20; Plaintiff's MDS, Docket Entry No. 5, p. 5, at Question 9.

[44]Complaint, Docket Entry No. 1, pp. 4, 9, 11.

-13-

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

"Title II [of the ADA] imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners." <u>Garrett v. Thaler,</u> 560 F. App'x 375, 382 (5th Cir. 2014) (quoting <u>Tennessee v. Lane,</u> 124 S. Ct. 1978, 1993 (2004) and <u>Pennsylvania Dep't of Corrections v. Yeskey,</u> 118 S. Ct. 1952, 1956 (1998)); <u>see also Cadena v. El Paso County,</u> 946 F.3d 717, 723 (5th Cir. 2020).   The defendants correctly note that the ADA does not authorize individual liability.[45]   <u>See Nottingham v. Richardson,</u> 499 F. App'x 368, 376 n.6 (5th Cir. 2012) (citations omitted).   Therefore, the defendants' motion to dismiss Wilturner's ADA claims against them in their individual capacity will be granted.

The Fifth Circuit has recently held that allegations such as those made by Wilturner, concerning the denial of access to a shower that reasonably accommodates a prisoner's disability, are sufficient to plausibly allege a failure to accommodate that is actionable under the ADA against a defendant in his or her official capacity.   <u>See Buchanan v. Harris,</u> No. 20-20408, 2021 WL 4514694, at *2-3 (5th Cir. Oct. 1, 2021) (per curiam) (unpublished).   As a result, the defendants' motion to dismiss Wilturner's ADA claims against them in their official capacity must be denied.

_____

[45]Motion to Dismiss, Docket Entry No. 8, p. 10.

-14-

**E.    Eighth Amendment Claims**

Wilturner also alleges that depriving him of access to a shower violated the Eighth Amendment because it was done with deliberate indifference to his health and safety.[46]  The defendants argue that Wilturner has no Eighth Amendment claim because he fails to allege that he suffered a physical injury that is more than <u>de minimis</u> for purposes of recovering damages under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e).[47]   The defendants further allege that Wilturner fails to allege facts showing that they acted with deliberate indifference in violation of the Eighth Amendment and, as a result, they are entitled to qualified immunity.[48]

1.    <u>Physical Injury Requirement</u>

The PLRA, codified as amended at 42 U.S.C. § 1997e(e), precludes an action for compensatory damages stemming from a prisoner's conditions of confinement "without a prior showing of physical injury[.]"  The Fifth Circuit has determined that "the 'physical injury' required by § 1997e(e) 'must be more than <u>de minimus</u> [sic], but need not be significant." <u>Harper v. Showers,</u> 174 F.3d 716, 719 (5th Cir. 1999) (quoting <u>Siglar v. Hightower,</u> 112 F.3d 191, 193 (5th Cir. 1997)) (alteration in original).

---

[46]Complaint, Docket Entry No. 1, pp. 4, 9, 11.

[47]Motion to Dismiss, Docket Entry No. 8, pp. 7-8.

[48]<u>Id.</u> at 9-10, 13-14.

Wilturner alleges that as a result of the defendants' refusal to provide him with access to a shower that accommodated his disability, he slipped when the shower chair provided by Officer Goodall flipped over, causing him to injure his right hand, left shoulder, and neck.[49] He alleges that the conditions of confinement exacerbated his symptoms of COVID-19[50] and caused him to develop a rash that required medical treatment.[51] Because this case is still at the pleadings stage, there are no medical records showing the extent of these injuries. Accepting Wilturner's allegations as true and viewing them in the light most favorable to him as required by the standard of review, the court cannot say that the injuries described in the pleadings are insufficient for the purpose of precluding compensatory damages under § 1997e(e). Therefore, the defendants' motion to dismiss Wilturner's claims for compensatory damages as barred by § 1997e(e) will be denied.

2.   <u>Qualified Immunity</u>

Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of

---

[49]Complaint, Docket Entry No. 1, p. 10 ¶ 28.

[50]<u>Id.</u> at 8 ¶¶ 13, 15; <u>see also</u> Plaintiff's MDS, Docket Entry No. 5, p. 5 at Question 7 (stating that he felt as though "death was about to take over from the lack of [the ability] to shower" and listing symptoms that included "repeated shaking and chills, shortness of breath and difficulty breathing, head ache, cough, and sore throat," which were made worse because he was unable to clean himself).

[51]Complaint, Docket Entry No. 1, p. 9 ¶ 21; Plaintiff's MDS, Docket Entry No. 5, p. 4, at Question 6.

qualified immunity.  <u>See Harlow v. Fitzgerald,</u> 102 S. Ct. 2727, 2738 (1982).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs,</u> 106 S. Ct. 1092, 1096 (1986).  A plaintiff seeking to overcome qualified immunity must show:  "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080 (2011) (citation omitted).  If the plaintiff demonstrates that a defendant's actions violated a constitutional right that was clearly established, the court then asks whether qualified immunity is appropriate, nevertheless, "because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" <u>Brown v. Callahan,</u> 623 F.3d 249, 253 (5th Cir. 2010) (quoting <u>Collins v. Ainsworth,</u> 382 F.3d 529, 537 (5th Cir. 2004)); <u>see also Cherry Knoll, L.L.C. v. Jones,</u> 922 F.3d 309, 318 (5th Cir. 2019).

Wilturner alleges that by depriving him of a safe, accessible shower that accommodated his disability while in quarantine, the defendants deprived him of humane conditions of confinement in violation of the Eighth Amendment, which prohibits cruel and unusual punishment, <u>i.e.</u>, the "unnecessary <u>and wanton</u> infliction of pain." <u>Wilson v. Seiter,</u> 111 S. Ct. 2321, 2323 (1991) (quoting <u>Estelle v. Gamble,</u> 97 S. Ct. 285, 291 (1976)).  The Supreme Court has recognized that prison conditions may be "restrictive and even

harsh" without violating the Eighth Amendment.  <u>Rhodes v. Chapman,</u> 101 S. Ct. 2392, 2399 (1981).  Although the Constitution "'does not mandate comfortable prisons,' . . . neither does it permit inhumane ones."  <u>Farmer v. Brennan,</u> 114 S. Ct. 1970, 1976 (1994) (quoting <u>Rhodes,</u> 101 S. Ct. at 2400).  Specifically, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]"  <u>Farmer,</u> 114 S. Ct. at 1976 (internal quotation marks omitted).

To demonstrate a violation of the Eighth Amendment where conditions of confinement are concerned, a prisoner must demonstrate that his confinement resulted in a deprivation that was "objectively, 'sufficiently serious,'" such that it resulted in the denial of "'the minimal civilized measure of life's necessities.'" <u>Farmer,</u> 114 S. Ct. at 1977 (quoting <u>Rhodes,</u> 101 S. Ct. 2399).  <u>See, e.g.,</u> <u>Palmer v. Johnson,</u> 193 F.3d 346, 354 (5th Cir. 1999) (finding that conditions violated the Eighth Amendment where inmates were herded into a small outdoor space, deprived of protection from excessive cold and wind, and provided no sanitary means of disposing of their waste).  When analyzing an Eighth Amendment claim courts must measure prison conditions under the "evolving standards of decency that mark the progress of a maturing society[.]"  <u>Gates v. Cook,</u> 376 F.3d 323, 332-33 (5th Cir. 2004) (citation and internal quotation marks omitted).

-18-

If a sufficiently serious deprivation is shown, a plaintiff must then show that prison officials acted with "deliberate indifference" to the effect that this deprivation would have on his health and safety. Farmer, 114 S. Ct. at 1977. "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 114 S. Ct. at 1979. A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 1984.

Wilturner contends that the defendants knowingly deprived him of the ability to clean himself for a prolonged period of time and subjected him to conditions of confinement that were needlessly inhumane.[52] Specifically, Wilturner alleges that the defendants were aware that he was disabled and that he had a disability shower pass from the medical department, but deliberately ignored his

---

[52]Plaintiff's Reply, Docket Entry No. 11, pp. 2-3.

request for access to a shower that accommodated his need to bathe in a safe manner.[53]   Although Officer Goodall provided Wilturner with a chair in an attempt to accommodate his need to sit down in the shower, the "makeshift handicap chair" was not bolted to the floor or secured in any way and flipped over when Wilturner used it to steady himself, causing him to fall and injure himself.[54] Viewing the allegations in the light most favorable to Wilturner, he claims that he was unable to clean himself adequately while housed in unsanitary conditions because the defendants denied him access to a safe shower.

The Fifth Circuit has observed that "'the deprivation of basic elements of hygiene'" is among those conditions of confinement that are "so 'base, inhuman and barbaric' that they violate the Eighth Amendment." Palmer, 193 F.3d at 352 (quoting Novak v. Beto, 453 F.2d 661, 665 (5th Cir. 1971)).   Accepting Wilturner's allegations as true, he has stated a plausible claim that the conditions of his confinement deprived him of basic hygiene needs and exposed him to health risks in violation of contemporary standards of decency and the Eighth Amendment.   See Bradley v. Puckett, 157 F.3d 1022, 1025-26 (5th Cir. 1998).   Because his allegations further call into

---

[53]Complaint, Docket Entry No. 1, pp. 8-9 ¶ 19; Plaintiff's MDS, Docket Entry No. 5, pp. 5-6, at Questions 8-11.

[54]Plaintiff's Reply, Docket Entry No. 11, p. 3; Complaint, Docket Entry No. 1, p. 10 ¶¶ 27-28.

question whether the defendants' actions were objectively reasonable under the circumstances, additional briefing and access to records is needed to determine whether qualified immunity is appropriate. Accordingly, the defendants' motion to dismiss the Eighth Amendment claims against them in their individual capacity will be denied.

## IV. <u>Conclusion and Order</u>

Based on the foregoing, the court **ORDERS** as follows:

1. Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket Entry No. 8) is **GRANTED**

   (a) as to Wilturner's claims for injunctive relief,

   (b) to the extent that Wilturner seeks monetary damages from the defendants in their official capacity under § 1983, and

   (c) as to Wilturner's ADA claims against defendants in their individual capacity;

   and is **DENIED** as to Wilturner's

   (a) claims against Warden Richardson and Assistant Warden Hutto based on their roles as supervisory officials,

   (b) ADA claims against defendants in their official capacity,

   (c) claims for compensatory damages as barred by § 1997e(e), and

   (d) Eighth Amendment claims against defendants in their individual capacity.

-21-

2.    The defendants shall file any motion for summary judgment on the remaining claims within 90 days from the date of this Memorandum Opinion and Order.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 18th day of November, 2021.


_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE