United States District Court
Southern District of Texas

**ENTERED**

December 21, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JONATHAN WILTURNER,<br>TDCJ #1855260, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-0413 |
| | § | |
| WARDEN JEFFERY RICHARDSON,<br>et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Jonathan Wilturner has filed a Prisoner's Civil
Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry
No. 1) concerning the conditions of his confinement in the Texas
Department of Criminal Justice ("TDCJ"). Warden Jeffery Richardson,
Assistant Warden Tracy Hutto, and Officer Daniel Goodall have filed
Defendants' Motion for Summary Judgment ("Defendants' MSJ") (Docket
Entry No. 24), arguing that Wilturner's claims are unsupported by
the evidence and fail as a matter of law. Wilturner has not filed
a response and his time to do so has expired. After considering all
of the pleadings and the applicable law, the Defendants' MSJ will be
granted, and this case will be dismissed for the reasons explained
below.

## I.  Background

Wilturner's lawsuit concerns the conditions of his confinement at the Estelle Unit in Huntsville,[1] where the defendants were employed by TDCJ.[2]  The court previously dismissed Wilturner's claims for injunctive relief and his claims for monetary damages against the defendants under 42 U.S.C. § 1983 in their official capacity as state employees.[3]  The only remaining issues are whether the defendants are liable for monetary damages in their individual capacity for violating Wilturner's rights under the Eighth Amendment and whether they are liable in their official capacity for violating the Americans with Disabilities Act (the "ADA").[4]

---

[1]Complaint, Docket Entry No. 1, pp. 3-4. For purposes of identification all page numbers refer to the pagination imprinted on each docket entry by the court's electronic case filing system, ECF.

[2]Id. at 3, 7.  Each defendant has provided a sworn declaration explaining that they are still employed by TDCJ but are no longer assigned to the Estelle Unit.  Richardson now serves as Deputy Division Director of Manufacturing and Logistics for TDCJ.  See Declaration of Jeffery Richardson ("Richardson Declaration"), Exhibit B to Defendants' MSJ, Docket Entry No. 24-2, p. 2.  Hutto now serves as Senior Warden at the Rufus H. Duncan Geriatric Facility.  See Declaration of Tracy Hutto ("Hutto Declaration"), Exhibit C to Defendants' MSJ, Docket Entry No. 24-3, p. 2.  Officer Goodall now serves as a Food Service Manager II at the O.B. Ellis Unit.  See Declaration of Daniel Goodall ("Goodall Declaration"), Exhibit D to Defendants' MSJ, Docket Entry No. 24-4, p. 2.

[3]Memorandum Opinion and Order, Docket Entry No. 12, p. 21.

[4]Id.

## A.    Wilturner's Allegations

Wilturner's primary claim is that the defendants violated his rights by temporarily denying him access to a shower that accommodated his disability.[5]  Wilturner alleges that he suffered a back injury when he fell from the top bunk and landed on the concrete floor of his cell at the Estelle Unit on July 26, 2019.[6] Although a medical provider issued a "disability shower pass" so that he could sit down while taking a shower,[7] Wilturner contends that he was denied access to a shower that accommodated his disability during and immediately after the time that he was placed in quarantine for COVID-19, beginning on August 7, 2020.[8]

Wilturner alleges that lack of access to a shower aggravated his symptoms of COVID-19.[9]  He also developed a rash on his chest that the medical department treated with hydrocortisone cream.[10] Wilturner complained to Warden Richardson and Assistant Warden Hutto, but neither one afforded him with a shower that accommodated his disability or his need for basic hygiene during his time in

---

[5]Complaint, Docket Entry No. 1, pp. 4, 9, 11.

[6]Plaintiff's More Definite Statement ("Plaintiff's MDS"), Docket Entry No. 5, p. 3, at Question 4(b).  The injury that Wilturner sustained was the subject of a separate lawsuit in this district.  See Wilturner v. Dickerson, Case No. 4:20-cv-1464 (S.D. Tex. Jan. 24, 2022) (Memorandum and Order, Docket Entry No. 35) (granting the defendant's motion for summary judgment).

[7]Complaint, Docket Entry No. 1, p. 4 ¶ V.

[8]Id. at 4 ¶ V and 8 ¶¶ 12, 15; Plaintiff's MDS, Docket Entry No. 5, pp. 2-3, at Question 3(a), Question 3(b).

[9]Complaint, Docket Entry No. 1, p. 8 ¶ 15.

[10]Id. at 9 ¶ 21.

quarantine.[11]  Wilturner claims that when he complained to Officer Goodall about the lack of a shower and showed him his disability shower pass, Goodall responded by giving him a chair to sit on that flipped over while he was using a regular shower and caused him further injury.[12]

## B.   Defendants' Summary Judgment Motion

The defendants move for summary judgment, arguing that Wilturner's claims are unsupported by the evidence and that the Prison Litigation Reform Act ("PLRA") precludes his claim for monetary damages.[13]   The defendants also argue that they are entitled to both qualified and Eleventh Amendment immunity from Wilturner's claims for monetary damages.[14]   In support, the defendants have submitted an affidavit from a physician[15] who provides a summary of Wilturner's medical condition along with relevant records,[16] as well as their own sworn declarations.[17]

---

[11]Complaint, Docket Entry No. 1, pp. 8-9 ¶¶ 17-20.

[12]Id. at 9-10 ¶¶ 22-23, 27-28.

[13]Defendants' MSJ, Docket Entry No. 24, pp. 13-15.

[14]Id. at 15-24.

[15]Affidavit of Monte K. Smith, D.O. ("Smith Affidavit"), Exhibit A to Defendant's MSJ, Docket Entry No. 24-1, pp. 2-9.

[16]Id. at 10-176 (Exhibits 1-12 to Smith Affidavit).  Although Dr. Smith cites generally to these exhibits, the court has reviewed all of them and will provide a more specific citation to their location in the record.

[17]See Defendants' MSJ, Exhibit B, Richardson Declaration, Docket Entry No. 24-2; Exhibit C, Hutto Declaration, Docket Entry No. 24-3; and Exhibit D, Goodall Declaration, Docket Entry No. 24-4.

The physician who reviewed Wilturner's medical records reports that Wilturner is a 30-year-old male prisoner with a history of chronic back and neck pain, hypertension, obesity, urinary incontinence, and neuropathy in his lower extremities.[18] Wilturner received medical treatment for back pain due to the injury he sustained when he fell from his top bunk on July 26, 2019.[19] On November 22, 2019, a physician at the Estelle Unit issued Wilturner a 180-day "disability shower pass" after diagnosing an "acute lumbosacral sprain."[20]

On August 7, 2020, prison officials placed Wilturner in quarantine in the C1-Wing cellblock of the Estelle Unit after he tested positive for COVID-19.[21] Medical records show that from the time his sample was collected for testing on August 3, 2020, through August 13, 2020, Wilturner showed no symptoms of COVID-19.[22] On August 14, 2020, Wilturner was moved from quarantine in the

---

[18]Smith Affidavit, Exhibit A to Defendant's MSJ, Docket Entry No. 24-1, p. 3 (citing Exhibit 2 to Smith Affidavit, Correctional Managed Health Care ("CMHC") records, Docket Entry No. 24-1, pp. 16-37).

[19]Id. at 4 (citing Exhibit 4 to Smith Affidavit, CMHC Clinic Notes, Docket Entry No. 24-1, pp. 86-87).

[20]Id. (citing Exhibit 4 to Smith Affidavit, Offender Medical Pass History, Docket Entry No. 24-1, p. 85).

[21]Richardson Declaration, Exhibit B to Defendants' MSJ, Docket Entry No. 24-2, p. 2.

[22]Smith Affidavit, Exhibit A to Defendants' MSJ, Docket Entry No. 24-1, p. 5 (citing Exhibit 6 to Smith Affidavit, CMHC/TDCJ COVID-19 Medical Restriction Flow Sheet, Docket Entry No. 24-1, p. 93; CMHC/TDCJ COVID-19 Medical Isolation - ASYMPTOMATIC Positive Flow Sheet, Docket Entry No. 24-1, p. 94).

C1-Wing to the prison chapel where he could be monitored for COVID symptoms.[23]   According to Warden Hutto, the inmates who were assigned to the chapel had "full/free access" to accessible showers that would accommodate a disability.[24]

On August 15, 2020, Wilturner was removed from quarantine and assigned to the D1-Wing, which houses transient inmates of all custody levels.[25] Warden Hutto acknowledges that the D1-Wing did not have an accessible shower, but notes that any inmate with a disability shower pass could present that pass to an officer on duty to have an escort take him to an accessible shower in another nearby location.[26] Wilturner remained in D1-Wing until September 18, 2020, when he was moved to D2-Wing, which had accessible showers available without the need for a shower pass.[27]

Warden Hutto acknowledges that Wilturner was transported to the Huntsville Memorial Hospital while assigned to the D1-Wing on September 8, 2020, when he reportedly fell in the shower.[28] Officer Goodall was on duty when Wilturner requested a shower that day.[29]

---

[23]Hutto Declaration, Exhibit C to Defendants' MSJ, Docket Entry No. 24-3, p. 3.

[24]Id.

[25]Id.

[26]Id.

[27]Id.

[28]Id.

[29]Goodall Declaration, Exhibit D to Defendants' MSJ, Docket Entry No. 24-4, p. 2.

Consistent with the procedure described by Warden Hutto, Goodall explains that disabled inmates housed on the D1-Wing could request an escort to an accessible shower by presenting a disability shower pass.[30] According to Officer Goodall, two officers were needed to escort an inmate to the accessible showers.[31] Officer Goodall states that he and another officer made four requests for an escort to take Wilturner to the accessible showers during their eight-hour shift.[32] Towards the end of his shift Goodall gave Wilturner the option to continue waiting for an escort or using a regular shower on D1-Wing with a chair placed inside.[33] When Wilturner chose the latter option, Officer Goodall provided him with a chair.[34]

Officer Goodall observed Wilturner take "a long shower without incident" before drying off and putting his clothes on.[35] At that point, Goodall observed Wilturner sit down on the corner of the shower, flip the chair over, and start yelling.[36] After Wilturner requested medical assistance for back and wrist pain, Officer Goodall notified medical staff on duty.[37] Medical records show that

---

[30] Id.

[31] Id.

[32] Id.

[33] Id.

[34] Id.

[35] Id. at 3.

[36] Id.

[37] Id.

Wilturner complained of pain in his lower back, an inability to walk, and pain in his right wrist when he spoke to nurses who arrived to examine him in the shower that day.[38]  Wilturner was placed in a cervical neck collar and transported to the hospital to rule out a spinal injury.[39]  X-rays of Wilturner's right wrist and shoulder were normal, and a CT scan of his spine revealed no acute findings.[40]  Wilturner was discharged from the hospital and returned to the Estelle Unit the same day with a prescription for pain medication to treat bruises on his wrist, shoulder, and back.[41]

Medical records show that Wilturner was seen by a nurse on September 21, 2020, for reports of a rash on his chest.[42]  The skin examination was normal with no rash present.[43]  The nurse issued a tube of hydrocortisone 1% cream.[44]  Wilturner made no mention of a

---

[38]Smith Affidavit, Exhibit A to Defendants' MSJ, Docket Entry No. 24-1, p. 5 (citing Exhibit 8 to Smith Affidavit, CMHC Urgent/Emergent Care Record, Docket Entry No. 24-1, pp. 103-04).

[39]Id.

[40]Id. at 6 (citing Exhibit 9 to Smith Affidavit, Radiology Report, Docket Entry No. 24-1, pp. 118, 120-21).

[41]Id. (citing Exhibit 9 to Smith Affidavit, General Instructions with ExitWriter, Huntsville Memorial Hospital, Docket Entry No. 24-1, pp. 107-14; Prescription, Huntsville Memorial Hospital, Docket Entry No. 24-1, p. 122).

[42]Id. at 7 (citing Exhibit 11 to Smith Affidavit, CMHC Nursing Protocol for Contact Dermatitis/Fungal Infection, Docket Entry No. 24-1, pp. 147-48, 150).

[43]Id.

[44]Id.

rash during his next visit with a provider on September 24, 2020, where he was scheduled for follow-up appointments with a specialty clinic and physical therapy for his ongoing complaints of chronic neck and back pain.[45]

## II. <u>Standard of Review</u>

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2021); <u>see also Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. <u>Id.</u>

In deciding a summary judgment motion, the reviewing court must view all facts and inferences in the light most favorable to the nonmovant and resolve all factual disputes in his favor. <u>See Shah v. VHS San Antonio Partners, L.L.C.</u>, 985 F.3d 450, 453 (5th Cir. 2021). If the movant demonstrates an "'absence of evidentiary support in the record for the nonmovant's case,'" the burden shifts

---

[45]<u>Id.</u> (citing Exhibit 11 to Smith Affidavit, CMHC Clinic Notes, Docket Entry No. 24-1, pp. 152-54).

to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (citing Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)).   The nonmovant cannot avoid summary judgment by resting on his pleadings or presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation and quotation marks omitted); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a nonmovant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).

The plaintiff represents himself in this case.   Courts are required to give a pro se litigant's contentions a liberal construction. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam) (citation omitted).   Nevertheless, a pro se litigant is not excused from meeting his burden of proof of specifically referring to evidence in the summary judgment record and setting forth facts showing that there is a genuine issue of material fact remaining for trial. See Outley v. Luke & Associates, Inc., 840 F.3d 212, 217 (5th Cir. 2016).

As noted above, the plaintiff has not filed a response to the motion for summary judgment.   The court specifically directed the plaintiff to respond within thirty days to any dispositive motion

-10-

filed by the defendants or face dismissal for want of prosecution.[46] Although the court granted the plaintiff's motion for an extension of time to respond,[47] no response was ever filed. Notwithstanding the plaintiff's failure to respond, summary judgment may not be awarded by default "simply because there is no opposition, even if the failure to oppose violated a local rule." Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985). "However, a court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." Day v. Wells Fargo Bank Nat'l Ass'n, 768 F.3d 435, 435 (5th Cir. 2014) (citation omitted); see also Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988).

### III.  Discussion

### A.  The Claims for Monetary Damages

Richardson and Hutto argue that Wilturner cannot recover monetary damages from them because the evidence does not show that he suffered a physical injury that is more than de minimis for purposes of PLRA, 42 U.S.C. § 1997e(e).[48]  The PLRA, codified as amended at 42 U.S.C. § 1997e(e), precludes an action for compensatory damages stemming from a prisoner's conditions of confinement "without a prior showing of physical injury[.]"  The

---

[46]Order and Request for Answer, Docket Entry No. 6, p. 3 ¶ 5.

[47]Order, Docket Entry No. 27.

[48]Defendants' MSJ, Docket Entry No. 24, pp. 13-15.

Fifth Circuit has determined that "the 'physical injury' required by § 1997e(e) 'must be more than <u>de minimus</u> [sic], but need not be significant.'" <u>Harper v. Showers,</u> 174 F.3d 716, 719 (5th Cir. 1999) (quoting <u>Siglar v. Hightower,</u> 112 F.3d 191, 193 (5th Cir. 1997)) (alteration in original).

Although Wilturner alleged that lack of a shower aggravated his symptoms of COVID-19, medical records from the time he spent in quarantine reflect that he was asymptomatic.[49] There is no evidence showing that he suffered any physical injury as a direct result of the actions attributed to Warden Richardson or Assistant Warden Hutto. Accordingly, Richardson and Hutto are entitled to summary judgment on this issue.

## B. The Eighth Amendment Claims

The defendants argue further that there is no evidence showing that Wilturner was denied access to a shower or that his rights were violated under the Eighth Amendment.[50] The defendants argue, therefore, that they are entitled to qualified immunity from the claims for monetary damages against them in their individual capacity under the Eighth Amendment.[51]

---

[49]Smith Affidavit, Exhibit A to Defendants' MSJ, Docket Entry No. 24-1, p. 3 (citing Exhibit 6 to Smith Affidavit, CMHC/TDCJ COVID-19 Medical Restriction Flow Sheet, Docket Entry No. 24-1, p. 93; CMHC/TDCJ COVID-19 Medical Isolation - ASYMPTOMATIC Positive Flow Sheet, Docket Entry No. 24-1, p. 94).

[50]Defendants' MSJ, Docket Entry No. 24, pp. 15-19.

[51]<u>Id.</u> at 20-21.

1.   Qualified Immunity

Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. See Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982).   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."   Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986).   A plaintiff seeking to overcome qualified immunity must show:   "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted).   If the plaintiff demonstrates that a defendant's actions violated a constitutional right that was clearly established, the court then asks whether qualified immunity is appropriate, nevertheless, "because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'"   Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010) (quoting Collins v. Ainsworth, 382 F.3d 529, 537 (5th Cir. 2004)).

Importantly, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available."   King v. Handorf, 821 F.3d 650, 653 (5th Cir. 2016) (internal quotation marks omitted).   "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct

-13-

violated clearly established law and that genuine issues of
material fact exist regarding the reasonableness of the official's
conduct." Id. at 654 (quoting Gates v. Texas Dep't of Protective &
Regulatory Servs., 537 F.3d 404, 419 (5th Cir. 2008)). "To negate
a defense of qualified immunity and avoid summary judgment, the
plaintiff need not present 'absolute proof,' but must offer more
than 'mere allegations.'" Id. (quoting Manis v. Lawson, 585 F.3d
839, 843 (5th Cir. 2009)). Wilturner has not filed a response to
the summary judgment motion, and the record does not otherwise
reflect that the defendants violated his constitutional rights
under the Eighth Amendment for reasons discussed below under the
governing standard for claims involving conditions of confinement.

2. Eighth Amendment Conditions of Confinement

Wilturner alleges that by depriving him of a safe, accessible
shower that accommodated his disability, the defendants deprived
him of humane conditions of confinement in violation of the Eighth
Amendment,[52] which prohibits cruel and unusual punishment, i.e., the
"unnecessary and wanton infliction of pain." Wilson v. Seiter, 111
S. Ct. 2321, 2323 (1991) (quoting Estelle v. Gamble, 97 S. Ct. 285,
291 (1976)). To demonstrate a violation of the Eighth Amendment
where conditions of confinement are concerned, a prisoner must
demonstrate that his confinement resulted in a deprivation that was
"objectively, 'sufficiently serious,'" such that it resulted in the

---

[52]Complaint, Docket Entry No. 1, pp. 4, 9, 11.

denial of "'the minimal civilized measure of life's necessities.'" Farmer v. Brennan, 114 S. Ct. 1970, 1977 (1994) (quoting Rhodes v. Chapman, 101 S. Ct. 2392, 2399 (1981)).   If a sufficiently serious deprivation is shown, a plaintiff must then show that prison officials acted with "deliberate indifference" to the effect that this deprivation would have on his health and safety.   Farmer, 114 S. Ct. at 1977.

"Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).   "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 114 S. Ct. at 1979.   A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."   Id. at 1984.

a.   Warden Richardson

During the time that Wilturner was placed in quarantine for COVID-19 in August of 2020, Warden Richardson was serving as Senior Warden at the Estelle Unit, which houses more than 3,000 offenders,

-15-

including many with medical needs.[53]  Warden Richardson states that
he did not personally deny Wilturner a shower and does not recall
speaking to him directly.[54]  Richardson did not learn of Wilturner's
complaints until he responded to a grievance submitted by Wilturner
on August 17, 2020.[55]  Warden Richardson denied that grievance on
August 26, 2020, after an investigation failed to substantiate
Wilturner's claim that he was denied a shower.[56]

Wilturner, who was first placed in quarantine on August 7,
2020, has not refuted the defendants' evidence that he had access
to a shower one week later while confined in the chapel on
August 14-15, 2020.[57]  Likewise, Wilturner has not refuted the
defendants' evidence showing that he had access to a shower
throughout the time he was housed on C1 and D1-Wing because he
could have requested an escort to an accessible shower at any time

---

[53]Richardson Declaration, Exhibit B to Defendants' MSJ, Docket
Entry No. 24-2, pp. 2, 3.

[54]Id. at 2.

[55]Id. at 3 (referencing Step 1 Grievance No. 2020164840); see
Step 1 Grievance No. 2020164840, Exhibit F to Defendants' MSJ,
Docket Entry No. 24-6, pp. 24-25; and Step 2 Grievance
No. 2020164840, Exhibit F to Defendants' MSJ, Docket Entry No. 24-6,
pp. 22-23.

[56]Richardson Declaration, Exhibit B to Defendants' MSJ, Docket
Entry No. 24-2, p. 3; Step 1 Grievance No. 2020164840, Exhibit F to
Defendants' MSJ, Docket Entry No. 24-6, p. 25.

[57]Richardson Declaration, Exhibit B to Defendants' MSJ, Docket
Entry No. 24-2, p. 3; Hutto Declaration, Exhibit C to Defendants'
MSJ, Docket Entry No. 24-3, p. 3.

by presenting his shower pass.[58]   A nonmovant may not rely on
conclusory allegations in his pleadings to defeat summary judgment.
See Park v. Stockstill Boat Rentals, Inc., 492 F.3d 600, 605 (5th
Cir. 2007).   Instead, "the nonmovant must go beyond the pleadings
and designate specific facts showing that there is a genuine issue
for trial."   Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th
Cir. 1994) (en banc) (citing Celotex, 106 S. Ct. at 2553-54).
Wilturner has failed to meet his burden to demonstrate that he was
denied a shower during the relevant time period.

Even assuming that Wilturner went without a shower for a
period of time after testing positive for COVID-19, Wilturner does
not show that Warden Richardson personally denied him access to a
shower or that Richardson knew of, but disregarded, a substantial
risk of serious harm.   See Domino, 239 F.3d at 755; see also
Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415,
420 (5th Cir. 2017) (noting that supervisory officials are
accountable for their own acts of deliberate indifference, but not
for the actions of others under their supervision).   Absent a
showing that Warden Richardson acted with deliberate indifference,
Wilturner does not demonstrate that Richardson violated his rights
under the Eighth Amendment.   Therefore, Richardson is entitled to
qualified immunity from these claims.

---

[58]Richardson Declaration, Exhibit B to Defendants' MSJ, Docket
Entry No. 24-2, p. 3; Hutto Declaration, Exhibit C to Defendants'
MSJ, Docket Entry No. 24-3, p. 3; Goodall Declaration, Exhibit D to
Defendants' MSJ, Docket Entry No. 24-4, p. 2.

b.   Assistant Warden Hutto

Like Warden Richardson, Assistant Warden Hutto occupied a supervisory role at the Estelle Unit during the time that Wilturner was quarantined for COVID-19.[59]   Hutto asserts that she has no recollection of ever speaking with Wilturner.[60]   Nevertheless, Hutto insists that if Wilturner had contacted her, she would have advised him of the procedure for presenting his shower pass and requesting an escort to the accessible showers.[61]

Wilturner has not presented evidence showing that he requested access to a shower and that Assistant Warden Hutto denied that request or that she otherwise disregarded a substantial risk to Wilturner's health and safety with deliberate indifference.   See Domino, 239 F.3d at 755; see also Alderson, 848 F.3d at 420. Therefore, Hutto is also entitled to qualified immunity from Wilturner's claims under the Eighth Amendment.

c.   Officer Goodall

The claims against Officer Goodall stem from the incident that occurred on the D1-Wing on September 8, 2020, when Wilturner alleges that he fell in the shower after tipping over a chair that Officer Goodall provided.[62]   Officer Goodall states that he made

---

[59]Hutto Declaration, Exhibit C to Defendants' MSJ, Docket Entry No. 24-3, p. 2.

[60]Id. at 2, 3.

[61]Id. at 3.

[62]Complaint, Docket Entry No. 1, p. 9 ¶¶ 22-23; Plaintiff's MDS, Docket Entry No. 5, p. 5 (answer to Question 10).

multiple requests for an escort to take Wilturner to an accessible shower, but that Wilturner ultimately chose not to wait.[63]  Officer Goodall also disputes Wilturner's account that he fell, stating that Wilturner showered without incident before flipping the chair over himself.[64]

Wilturner acknowledges in his pleadings that Officer Goodall went to "see what he [could] do" after Wilturner requested access to a shower on September 8, 2020.[65]  Wilturner does not dispute that Officer Goodall made multiple requests for an escort to take him to an accessible shower before offering him a chair to sit on in an attempt to accommodate his disability.[66]  Assuming that Wilturner's allegation is true and that he was injured when the chair flipped over in the shower, Wilturner also does not refute the evidence showing that Officer Goodall notified medical personnel promptly after Wilturner requested help.[67]

The medical records reflect that Wilturner sustained only minor injuries in the form of bruises as a result of falling in the shower.[68]  Although harm was not averted, Wilturner does not

---

[63]Goodall Declaration, Exhibit D to Defendants' MSJ, Docket Entry No. 24-4, p. 2.

[64]Id. at 3.

[65]Complaint, Docket Entry No. 1, p. 9 ¶ 23.

[66]Goodall Declaration, Exhibit D to Defendants' MSJ, Docket Entry No. 24-4, p. 2.

[67]Id. at 3.

[68]Smith Affidavit, Exhibit A to Defendants' MSJ, Docket Entry No. 24-1, p. 6 (citing Exhibit 9 to Smith Affidavit, General
(continued...)

demonstrate that Officer Goodall's actions were unreasonable under the circumstances or that he acted with deliberate indifference. See Farmer, 114 S. Ct. at 1983 ("Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."). Because Wilturner has failed to establish a constitutional violation, Officer Goodall is entitled to qualified immunity from his Eighth Amendment claims.

## C.   **The ADA Claims**

The defendants argue that Wilturner cannot prevail on a claim under the ADA because he cannot show that he was denied reasonable accommodations.[69]  The defendants also argue that Wilturner cannot recover compensatory damages under the ADA in any event because he cannot make a showing of intentional discrimination.[70]  Absent such a showing the defendants argue that they are entitled to retain their immunity under the Eleventh Amendment from Wilturner's claim for monetary damages.[71]

Wilturner's claim is governed by Title II of the ADA, which provides as follows:  "[N]o qualified individual with a disability

---

[68](...continued)
Instructions with ExitWriter, Huntsville Memorial Hospital, Docket Entry No. 24-1, pp. 107-14; Prescription, Huntsville Memorial Hospital, Docket Entry No. 24-1, p. 122).

[69]Defendants' MSJ, Docket Entry No. 24, pp. 22-23.

[70]Id. at 23.

[71]Id. at 24-25.

shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II [of the ADA] imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners." Garrett v. Thaler, 560 F. App'x 375, 382 (5th Cir. 2014) (quoting Tennessee v. Lane, 124 S. Ct. 1978, 1993 (2004) and Pennsylvania Dep't of Corrections v. Yeskey, 118 S. Ct. 1952, 1956 (1998)); see also Cadena v. El Paso County, 946 F.3d 717, 723 (5th Cir. 2020).

The defendants acknowledge that the C1 and D1 cellblocks where Wilturner was confined between August 7, 2020, and September 18, 2020, did not have a shower that was accessible to disabled prisoners.[72] As noted previously, however, the record shows that Wilturner had access to a shower while assigned to the prison chapel on August 14-15, 2020.[73] Likewise, he could have requested an escort to an accessible shower by presenting his shower pass to an officer at any time while housed on C1 and D1-Wing.[74] The record shows that Officer Goodall requested such an escort for Wilturner

---

[72]Richardson Declaration, Exhibit B to Defendants' MSJ, Docket Entry No. 24-2, p. 3; Hutto Declaration, Exhibit C to Defendants' MSJ, Docket Entry No. 24-3, p. 3.

[73]Id.

[74]Id.; Goodall Declaration, Exhibit D to Defendants' MSJ, Docket Entry No. 24-4, p. 2.

on September 8, 2020, but Wilturner elected not to wait and chose to shower using the chair that Goodall provided.[75]

The ADA provides a right to reasonable accommodation, not to the plaintiff's preferred accommodation.   See EEOC v. Argo Distribution, LLC, 555 F.3d 462, 471 (5th Cir. 2009).   An accommodation is reasonable when it provides "meaningful access to the benefit" being offered.  Alexander v. Choate, 105 S. Ct. 712, 720 (1985).  When a suit involves a correctional facility, prison officials are accorded "deference in their determination of an appropriate accommodation."  Wells v. Thaler, 460 F. App'x 311, 313 (5th Cir. 2012) (per curiam) (citing Oliver v. Scott, 276 F.3d 736, 745 (5th Cir. 2002); Elliott v. Lynn, 38 F.3d 188, 190-91 (5th Cir. 1994)).   Because Wilturner has not shown that the proffered accommodation failed to afford him meaningful access to a shower or was otherwise unreasonable, he has not established a violation of the ADA.

In addition, Wilturner has not presented evidence showing that he was denied access to a shower as the result of intentional discrimination on behalf of the defendants or any other prison employee.  Because Wilturner has not come forward with evidence showing intentional discrimination that was based on his disability, he is not entitled to monetary damages, and the defendants are entitled to summary judgment on his claims under the ADA.  See Back

_____

[75]Goodall Declaration, Exhibit D to Defendants' MSJ, Docket Entry No. 24-4, p. 2.

v. Texas Department of Criminal Justice Institutional Division, 684 F. App'x 356, 358-59 (5th Cir. 2017) (per curiam).  Because he has failed to establish a viable claim under the ADA, the defendants are entitled to immunity under the Eleventh Amendment from this claim. See Wells, 460 F. App'x at 313 ("Because we find that [the plaintiff] has failed to raise an issue of material fact on his claims under Title II of the ADA, we hold that the state is entitled to immunity and we conclude that the claims for damages were properly dismissed.").  Accordingly, Defendants' MSJ will be granted and this action will be dismissed.

## IV.  Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1.    Defendants' Motion for Summary Judgment (Docket Entry No. 24) is **GRANTED**.

2.    The civil action filed by Jonathan Wilturner is **DISMISSED WITH PREJUDICE**.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 21st day of December, 2022.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-23-